**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HEIDI E. PADEN,** | : | |
| **Plaintiff,** | : | **Case No. 2:06-cv-173** |
| **v.** | : | **Judge Holschuh** |
| **JPMORGAN CHASE MEDICAL PLAN, et al.,** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, a motion to stay the case pending the exhaustion of administrative remedies filed by a defendant, United Heath Care ("United"). The motion is fully briefed and ripe for adjudication. For the following reasons, the motion will be denied.

I.

The following alleged facts are taken directly from the complaint:

> The Plaintiff, Heidi E. Paden, is an employee of Chase Home Finance LLC and, by virtue of her employment, is a participant in the JPMorgan Chase Medical Plan.
>
> The JPMorgan Chase Medical Plan (the "Medical Plan") is an employee welfare benefit plan established and maintained pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") ....
>
> United Healthcare is an insurer authorized to do business in Ohio and elsewhere with whom the Medical Plan, through its fiduciaries, contracted to administer certain medical claims and pay benefits in accordance with the terms of the Medical Plan.
>
> ***
>
> On or about April 2002, Plaintiff Heidi Paden was diagnosed by her physicians as morbidly obese and recommended as a candidate for gastric bypass.
>
> On or about October 2002, the Medical Plan approved Paden's claim for coverage for the recommended gastric bypass and authorized payment for it.

On or about December 3, 2002, Paden's physicians performed the gastric bypass. The Medical Plan approved and paid claims associated with the gastric bypass.

As a direct result of the gastric bypass, and over a series of months following the gastric bypass, Paden lost 221 pounds.

As a result of the significant weight loss, Paden was left with massive quantities of loose skin hanging from her body.

***

The presence of loosely hanging skin causes chronic skin abscesses, rashes and infections, significantly impedes a patient's ability to care for herself hygienically, interferes with ambulation, imposes strains on muscles and joints of the back, shoulders and neck, and promotes psychosocial disabilities associated with a disfigured appearance.

Plaintiff Paden has experienced and continues to experience many of the conditions described in the foregoing paragraph.

Reconstructive surgery is the commonly accepted means of resolving this medical condition and is recognized by experienced practitioners as medically necessary for the proper functioning of the human body's largest organ, the skin.

Beginning in June 2004, Paden's physicians recommended reconstructive surgery, including panniculectomy, to remove the excess skin that had accumulated as a result of 221 pounds of weight loss.

At all times relevant to the allegations of this Complaint, Paden's physicians determined that reconstructive surgery was medically necessary.

On or about July 2005, Paden consulted with Dr. Bivik Shah, who recommended reconstructive surgery.

In accordance with Medical Plan requirements, Dr. Shah asked Defendant United Healthcare, as claims administrator for the Medical Plan, to authorize payment for the reconstructive surgery.

While awaiting a final decision from United Healthcare concerning Dr. Shah's request, Paden sought a second opinion from Dr. Robert Heck.

Ultimately, Paden decided she preferred that Dr. Heck perform the surgery.

In accordance with the Medical Plan requirements, Dr. Heck, therefore, asked

Defendant United Healthcare, as claims administrator for the Medical Plan to authorize payment for reconstructive surgery.

In the meantime, United Healthcare, by letter dated August 11, 2005, approved Paden's request for Dr. Shah to perform the surgery. ***

Thereafter, United Healthcare denied Paden's request for Dr. Heck to perform the surgery.

Upon learning of the denial, Dr. Heck reforumulated his request to conform precisely to the request submitted by Dr. Shah, which United Healthcare had previously approved.

By letter dated October 4, 2005, United Healthcare denied Dr. Heck's reformulated request for approval. ***

With one approval and a subsequent denial, Paden was uncertain whether she could proceed with the surgery without risking incurring the cost herself if United Healthcare ultimately refused to provide coverage.

On November 14, 2005, through counsel, Paden appealed United Healthcare's denial of the request for reconstructive surgery.

In the same letter, Paden asked that United Healthcare produce to her its complete administrative record, including not only the documents associated with the denial of the request submitted through Dr. Heck, but also the documents associated with the earlier approval of the request submitted through Dr. Shah. ***

In the same letter Paden also asked United Healthcare to produce relevant plan documents and other instruments pursuant to which the Medical Plan is administered.

By letter dated November 28, 2005, United Healthcare, through an "appeals coordinator" identified only as Vicki S, acknowledged receipt of the November 14 appeal letter and asked Paden to sign a release authorizing release of the information requested to Paden's counsel. ***

Paden completed and returned the release, as requested, on December 7, 2005, expressing authorizing her counsel to prosecute an appeal on her behalf.

On January 17, 2006, Paden, through counsel, wrote again to United Healthcare requesting a response to her November 14, 2005, letter. ***

By letter dated February 10, 2006, United Healthcare, through an "appeals

> coordinator" identified only as Ron W, advised Paden that he was refusing to process Paden's November 14 appeal. ***

(Compl. ¶¶ 1-3, 7-11, 13-34). On January 4, 2006, in a letter discovered after the complaint was filed, United rejected Ms. Paden's November 14, 2007 appeal of Dr. Heck's reformulation and request to perform reconstructive surgery. (Plaintiff's Memo. in Opp. to the Mot. to Dismiss (doc. #18), Ex. 6).

II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir.1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988)(emphasis in original). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough. Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 (2007).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank

of St. Louis, 358 F.3d 392, 393 (6th Cir.2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir.1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir.2000); Lewis, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir.1978)).

It is with this standard in mind that United's motion will be evaluated.

III.

In its motion to dismiss, United argues that Ms. Paden failed to exhaust all administrative appeals as required under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. §§ 1001, et seq. Specifically, United contends that the ERISA-backed plan that Ms. Paden participates in as an employee of Chase Home Finance LLC mandates a five-step appellate process before filing suit in federal court. United claims that after Ms. Paden's request for benefits coverage was denied, Ms. Paden completed only one of the two required appeals. Thus, according to United, she failed to exhaust all her administrative remedies. Additionally, in anticipation of Ms. Paden's rebuttal argument, United also argues that Ms. Paden's situation fails to meet the "futility" exception to ERISA's administrative exhaustion requirement. See Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir.1998)(nonexhaustion permissible where resorting to the plan's exhaustion requirements would be futile or inadequate).

In response, Ms. Paden claims that the ERISA-backed plan mandates only a four-step appellate process. She suggests that under the plain language of the Summary Plan Description ("SPD"), the fifth appellate step is voluntary, and an employee seeking benefits coverage under the plan may file suit in federal court once the initial appeal is denied. Alternatively, Ms. Paden contends that under 29 C.F.R. § 2560.503-1(1), her benefit claim under the plan should be deemed exhausted because United failed to notify her of the denial of her appeal in a timely manner.

ERISA's administrative scheme requires a participant to exhaust all administrative remedies

prior to filing suit in federal court. Miller v. Metropolitan Life Ins. Co., 925 F.2d 975, 986 (6th Cir.1991). The statute states that every employee benefit plan shall:

> provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> afford a reasonable opportunity to any participant whose claims for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. See also Costantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir.1994)(pointing out that both 29 U.S.C. § 1133 and ERISA's legislative history support exhaustion of administrative remedies before filing suit in federal court).

ERISA also requires that every employee benefit plan have a written instrument that provides who administers, controls and manages the plan. 29 U.S.C. § 1102(a)(1). The administrator must provide the employees and beneficiaries covered under an ERISA-backed plan an SPD that outlines the coverage under the plan. See 29 U.S.C. §§ 1021, 1022. An SPD must contain, among other things, "the procedures to be followed in presenting claims for benefits under the plan ... and the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022(b).

Here, the SPD that governs Ms. Paden's benefits coverage details the steps in the claims appeal process. The relevant portions state:

> **Step 1: Filing Your Initial Claim for Benefits**
>
> In general, when you file a claim for benefits, it is paid according to the provisions of the plan. There are different time requirements for different plans ....
>
> **Step 2: Receiving Notification from the Claims Administrator if an Initial Claim for Benefits is Denied**
>
> If an initial claim for benefits is denied, the claims administrator is required by law to notify you within a "reasonable" period of time according to the time frames outlined in the "Response Times for Claims Administrators" table below.
>
> [Response Times for Claims Administrator's Table:]
>
> Medical and Dental Plan - Timing for Notification of a Denial of Benefits Claim

- 15 days where approval is required before receiving benefits, plus one 15-day extension due to matters beyond the plan's control

**Step 3: Filing an Appeal to the Claims Administrator if an Initial Claim for Benefits is Denied**

If your initial claim for benefits is denied, you - or your authorized representative - may appeal the decision to the applicable claims administrator. You have 180 days to appeal a claim for benefits that is denied under the Medical Plan ...

**Step 4: Receiving Notification from the Claims Administrator If Your Appeal is Denied**

If your appeal is subsequently denied, the claims administrator is legally required to notify you of this decision within a "reasonable" period of time according to the time frames outlined in the "Response Times for Claims Administrators" table ....

[Response Times for Claims Administrator's Table:]

Medical and Dental Plan - Timing of Notification of a Denial of Benefits Appeal

- 30 days where approval is required before receiving benefits

**Other Options Available to You**

If an initial claim for benefits and any follow-up appeal is denied (in whole or in part), you may file suit in a federal court. If you are successful, the court may order the defending person or organization to pay your related legal fees. If you lose, the court may order you to pay these fees (for example, if the court finds your claim frivolous).

**Step 5: Filing a Final "Voluntary" Appeal to the JPMorgan Chase Benefits Fiduciary Committee for Denied Appeals Under the Medical Plan, Managed Prescription Drug Plan and/or Dental Plan**

In situations of a denied health care benefit, you may request a "voluntary" appeal review from the JPMorgan Chase Benefits Fiduciary Committee within 30 days after the final appeal with the applicable claims administrator has been exhausted. If accepted, this voluntary appeal review will have no effect on your rights to challenge the initial decision in federal court under ERISA, and any statute of limitations does not continue to run during the period of any such voluntary appeal. The plan will not assert that you have failed to exhaust administrative remedies because you did not elect a voluntary appeal. ***

(Plaintiff's Memo. in Opp. to the Mot. to Dismiss (doc. #18), Ex. 1c, pp. 13.11-13.16 (emphasis in original and some omitted for clarification)).

In the instant case, Ms. Paden originally was approved for reconstructive surgery to be performed by Dr. Shah. Before that surgery occurred, however, Ms. Paden changed her mind and opted for Dr. Heck to perform the surgery. Therefore, Dr. Heck and Ms. Paden had to seek approval again from United for Dr. Heck to perform the surgery. That approval was denied on October 4, 2005.

Subsequently, on November 14, 2005, Ms. Paden, through counsel, appealed United's decision to deny her surgery request to be performed by Dr. Heck. In that same appeal, Ms. Paden also sought all documents involving the denial. On November 28, 2005, United requested an authorization form to release all requested information to Ms. Paden's counsel, and Ms. Paden returned the release on December 7, 2005.

Ms. Paden's counsel wrote United on January 17, 2006 indicating that he did not receive any information regarding the documents involved with United's denial of Ms. Paden's surgery. On February 10, 2006, United responded that it could not comply with Ms. Paden's counsel's request because her counsel failed to submit a signed authorization release form. Moreover, the letter stated, "[y]our provider has appealed the denial of the reduction mammoplasty on 1/4/05.[[1]] Per your Summary Plan Description you are only permitted two levels of appeal, you now only have one more level of appeal left." (Compl., Ex. F (footnote added for clarification)).

In a letter dated January 4, 2006 from the United National Appeals Service Center, United denied Ms. Paden's appeal. The letter stated in pertinent part:

> We reviewed an appeal request filed on your behalf regarding coverage of the service that you intend to receive. During our review, we considered all the supporting information we have received to date. Your appeal was reviewed by Brian H. Rose, R.M.D., a UnitedHealthcare Field Medical Director.
>
> ***

---

[1] The reference to "the denial of the reduction mammoplasty on 1/4/05" is likely a typographical error because Ms. Paden did not initially consult with Dr. Shah until July 2005, which would be six months after the alleged denial of coverage. The correct date appears to be October 4, 2005 because that is the date when Ms. Paden's reformulated request for Dr. Heck to perform the surgery was denied.

> Upon review, it has been determined that there is a lack of documentation that the breast tissue is causing physiologic function impairment. A 600 gram reduction mammoplasty will primarily change appearance rather than improve physiologic function. Therefore, the proposed reduction mammoplasty is a cosmetic service under the Plan and is not a covered benefit.

(Plaintiff's Memo. in Opp. to the Mot. to Dismiss (doc. #18), Ex. 6).

Applying the facts as alleged in the complaint to the explicitly defined SPD benefits claims appeals process, the Court concludes that Ms. Paden exhausted all administrative remedies prior to filing suit in this Court. First, Ms. Paden, after consulting with Dr. Heck, filed for benefits coverage (Step 1). Subsequently, on October 4, 2005, United denied that request for benefits coverage (Step 2). Then, on November 14, 2005, Ms. Paden, through counsel, appealed United's decision to deny coverage (Step 3). Finally, United, via letter dated January 4, 2006, denied the appeal (Step 4). Thus, Ms. Paden clearly satisfied the *required* four-step benefits claims appeal process. According to the SPD, because the mandated four-step administrative appellate process was completed, Ms. Paden could either file suit in federal court or choose to file a final *voluntary* appeal to the JPMorgan Chase Benefits Fiduciary Committee. Here, after completing Step 4, Ms. Paden chose to file suit in this Court.

Because the Court concludes that Ms. Paden satisfied the benefits claims appellate process, and therefore exhausted all administrative remedies as outlined in the SPD, the court does not need to address whether United was timely in their denials of coverage. See 29 C.F.R. § 2560.503-1(l)("In the case of the failure of a plan to establish or follow claims procedures ... a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act ..."). Moreover, the Court need not address United's "futility" argument because it is inapplicable to the facts of this case.

IV.

Based on the foregoing reasons, because Ms. Paden exhausted all administrative remedies, United's motion to dismiss the complaint, or in the alternative, motion for stay of case pending the exhaustion of administrative remedies (doc. #12) is DENIED.

**IT IS SO ORDERED.**

Date: December 10, 2007

/s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court